Bruce FOX, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 54A01–9809–CR–324.

Court of Appeals of Indiana.

Oct. 19, 1999.

Rehearing Denied Dec. 17, 1999.

Michael A. Dvorak, Dvorak Fellrath & Dvorak, South Bend, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge

Bruce Fox appeals his convictions for four counts of child molesting [1], three as class C felonies and one as a class B felony. Fox raises four issues which we restate as:

1) whether the trial court abused its discretion when it refused to dismiss a juror for cause and refused to allow Fox

---

1. Ind.Code § 35–42–4–3.

to exercise a peremptory strike after the juror had been selected;

2) whether Fox's counsel was ineffective for failing to make a record of voir dire and sidebar conferences and for failing to disclose that an attorney working for his firm was married to a deputy prosecutor working in the county where he was tried;

3) whether the trial court's jury instruction on reasonable doubt constituted fundamental error; and

4) whether the trial court abused its discretion by admitting a video taped interview into evidence.

We affirm.

The facts most favorable to the judgment follow. The State charged Fox with four counts of child molesting his two step daughters. After a jury trial, Fox was found guilty as charged. The trial court sentenced Fox to a total of eighteen years.

### I.

The first issue is whether the trial court abused its discretion when it refused to dismiss a juror for cause and refused to allow Fox to exercise a peremptory strike after the juror had been selected. Fox requests our review of this issue despite the parties' stipulation not to record the voir dire proceedings.

■ To preserve an issue for appellate review a defendant must comply with Indiana Appellate Rule 7.2. *Reed v. State,*

702 N.E.2d 685, 689 (Ind.1998). That rule places the burden on the appellant to present to the appellate court a record that is complete with respect to the issues raised on appeal and to ensure that the appellate court has a transcript of the appropriate trial proceedings. *Id.* "A failure to provide a complete record may result in a waiver of the issue." *Id.* Indiana Appellate Rule 7.2(A)(3)(c) sets forth the procedure for preparing evidence for review of proceedings when no transcript was made.[2] Our supreme court has stated that "[f]ailure to comply with this rule precludes appellate review of any alleged errors attributed to nonrecordation." *Emmons v. State,* 492 N.E.2d 303, 305 (Ind.1986).

■ Here, the parties did not follow the procedure set forth in App. R. 7.2(A)(3)(c). *See* App. R. 7.2(A)(3)(c). However, the trial judge and defense counsel discussed this issue on the record as a preliminary matter before beginning the trial. Both the defense counsel and the trial judge recounted their recollection of the voir dire as it related to the selection of the juror in question. The discussion was as follows:

"MR. SANDY [defense counsel]: Unfortunately, we didn't choose to record voir dire. Mr. Mills, one of the jurors initially seated in the box was passed for cause and thereby tentatively placed on the jury. And the next time I was up with new jurors, I read the witness list of the State and asked if anyone was acquainted with any of the witnesses. Mr. Mills raised his hand even though

2. That rule provides:

"Statement of the Evidence or Proceedings When No Report Was Made or When the Transcript Is Unavailable. If no report of all or part of the evidence or proceedings at the hearing or trial was or is being made, or if a transcript is unavailable, a party may prepare a statement of the evidence or proceedings from the best available means, including his recollection. If submitted contemporaneously with the matter complained of, the statement may be settled and approved of by the trial court. If submitted thereafter, the statement shall be served on other parties who may serve objections or prepare amendments thereto

within ten (10) days after service. The statement and any objections or prepared amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall become a part of the record and be included by the clerk of the trial court in the record.

If statements or conduct of the trial judge are in controversy, the statement shall be supported by sworn affidavit which shall be submitted to the trial judge for his certification. If he refuses to certify the statement he shall file opposing affidavits. All such affidavits shall be included in the record by the clerk of the trial court."

App. R. 7.2(A)(3)(c).

he wasn't the one that we were interrogating and indicated he knew Lieutenant Richard Wilson. I inquired into it and they apparently have worked together for as I recall twenty or twenty-five years. He knows him very well. He would tend to—he indicated, I believe and I'll try to do this the best I can, I questioned him and asked if he would tend to believe Mr. Wilson more than some other police officer and he said he would have to. I said, Mr. Wilson is probably a major witness for the State and that we will be tempting to contradict his testimony and his actions. I didn't know he was in here. Oh. His actions have through cross-examination and other evidence and would he tend to be more likely to believe Mr. Wilson in spite of that and he might if he didn't know him and he said he was afraid he would. The court questioned him when I made a challenge for cause and as I can best summarize it and the Court may have a different version, he was asked if he would follow the law and he said, he would try to. He was asked initially if his knowledge and acquaintanceship with Mr. Wilson might tend to make him believe him more and he said, he was afraid it might. The Judge denied the challenge for cause. I then attempted to challenge him for entry and the Judge denied that. So we would object to the venire as far as Juror Mills is concerned.

COURT: Well, my recollection of the thing is a little different is that. But *the reason I rejected the peremptory is because of the rule I gave everybody at the pre-trial conference and told everybody that's the rule we're going to follow. And once you accepted them unless there was cause—found to be cause peremptory challenge wasn't available and I stand on that.* My feeling about this is in generally was that Mr. Mills was doing his level best to be honest with all of us. That while he worked with Mr. - what's his name, Wilson? Of course, I'm at a lose [sic] to understand that if he's

the key witness why none of this was gone into when we started the voir dire on the jury. It would seem to me that was the most important thing to go into and I think I suggested to counsel before we came in here you guys know who the witnesses are, something to that affect. You're going to ask them who they are, because I don't know who they are. I just know who's on the witness list and that doesn't mean they are going to testify. But my recollection of what Mr. Mills said was that he worked with him, he's a light and welder guy or something for the city. He knew Wilson. He knew him better when he was a policeman rather than now when apparently he's a detective, is that right? He used to see him quite often when he was a uniform officer and he did in fact know him. That he didn't have a social or personal relationship with him, but he was well acquainted with him. *And he told me he would do his very best to render a fair and impartial verdict in this case.* I do not believe there was cause shown and that's the way I called it."

Record, pp. 298–301 (emphasis added). We conclude that the above portion of the record is sufficient for us to review the merits of Fox's claims.

■ To begin, we will address whether the trial court abused its discretion when it refused to dismiss Juror Mills for cause. The grant or denial of a challenge for cause to a prospective juror is within the trial court's discretion and we will only reverse the trial court when its decision is illogical or arbitrary. *Bradley v. State,* 649 N.E.2d 100, 106 (Ind.1995), *reh'g denied.* Within the jury selection process, the challenge procedure has the purpose of ensuring a fair trial by an impartial jury. *Id.* We defer substantially to trial judges on the decision to dismiss a juror because they see the jurors firsthand and are in a much better position to assess a juror's ability to serve without bias and decide the

case according to law. *Jervis v. State*, 679 N.E.2d 875, 881–882 (Ind.1997).

■ Here, once empanelled, Juror Mills expressed that he knew one of the individuals on the witness list. As a result, Fox's counsel requested a challenge for cause. Fox's counsel and the trial court judge questioned Juror Mills. The judge stated that Juror Mills said that "he would do his very best to render a fair and impartial verdict in this case." Record, p. 301. The judge determined that Fox had not shown cause and that, as such, he did not dismiss Juror Mills. The trial judge here was in a much better position than we are to assess Juror Mills' ability to serve without bias and decide the case according to law. *See Jervis*, 679 N.E.2d at 881–882. We note that the purpose of voir dire is to determine whether prospective jurors can render a fair and impartial verdict in accordance with the law and evidence. *See Bradley*, 649 N.E.2d at 106. The trial judge's questioning revealed that Juror Mills could render a fair and impartial verdict here. *See id.* Therefore, we conclude that the trial court's decision was not illogical or arbitrary and we will not reverse its decision. *See id.*

■ Next, we will address whether the trial court abused its discretion when it refused to allow Fox to exercise a peremptory strike after Juror Mills had been selected. Our supreme court has held that the trial judge may impose reasonable limitations on the exercise of peremptory challenges so long as neither party is required to strike or accept the prospective jurors without having had the opportunity to consider the other party's voir dire. *Davis v. State*, 481 N.E.2d 387, 388 (Ind. 1985).

In this case, the trial court set forth the policy that once a juror was impaneled, that juror could only be excused for cause. Here, after Juror Mills had been selected, and another group of potential jurors was being questioned, Juror Mills expressed that he knew someone on the witness list.

Consequently, Fox requested the dismissal of Juror Mills through the use of a peremptory challenge. Fox could have inquired as to whether Juror Mills knew any of the witnesses prior to his selection, but he did not. The trial court's rule regarding the exercise of peremptory challenges was given to the parties at a pretrial conference. We conclude that the trial court's limitation on the use of peremptory challenges was reasonable. *See Davis*, 481 N.E.2d at 388. Therefore, we find that the trial court did not err in refusing Fox's request to dismiss Juror Mills. *See id.*

## II.

The second issue is whether Fox's counsel was ineffective. He begins by arguing that his counsel was ineffective because he failed to make a record of voir dire and the sidebar conferences. Next, he argues that his counsel was ineffective for failing to disclose that an attorney working for his firm was married to a deputy prosecutor.

■ Our supreme court has held that "[t]o establish a claim for ineffective assistance of trial counsel, a defendant must show that both his trial counsel's performance was sufficiently deficient and that prejudice resulted from that deficiency." *Bouye v. State*, 699 N.E.2d 620, 623 (Ind.1998). The defendant must first show that, in light of all the circumstances, the identified acts or wrongs of counsel were outside the range of professionally competent assistance. *Brown v. State*, 698 N.E.2d 1132, 1139 (Ind.1998), *reh'g denied*, *cert. denied*, —— U.S. ——, 119 S.Ct. 1367, 143 L.Ed.2d 527 (1999). The defendant must show that his counsel's performance was objectively unreasonable under the prevailing professional norms. *Id.* Isolated poor strategy, mistake, bad tactics, inexperience or carelessness do not necessarily amount to ineffective assistance of counsel unless, taken as a whole, the defense was inadequate. *Id.* Second, the defendant must show adverse prejudice as a result of the deficient performance. *Id.* The defendant must show this by demon-

strating that counsel's performance was so prejudicial that it deprived the defendant of a fair trial. *Id.* at 1139–1140. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Bouye,* 699 N.E.2d at 623.

### A.

We first determine whether Fox was prejudiced by his counsel's stipulation not to record voir dire and side bar conferences. Fox does not explain to us how he has been prejudiced by the failure of his trial counsel to record the voir dire and sidebar conferences. He simply states that "it is clear that Bruce Fox has suffered harm due to his counsel's failure to request that voir dire be recorded." Appellant's brief, p. 14. He also states that "the harm and prejudice caused to the defendant by the defense counsel's stipulation not to record voir dire is patent." Appellant's brief, p. 15. He seems to assert that because recordation is instrumental to his appeal of whether a specific juror should have been excused, not recording voir dire and sidebar conferences is per se prejudicial. This unsupported argument does not demonstrate that Fox was adversely prejudiced as a result of his attorney's performance. *See Brown,* 698 N.E.2d at 1139. Moreover, we concluded that the record was sufficient to review the trial court's denial of Fox's request to dismiss Juror Mills. *See supra,* part I. Consequently, Fox has not shown that his counsel's performance was so prejudicial that it deprived him of a fair trial. *See id.* at 1139–1140. Because Fox has not demonstrated prejudice, we do not discuss whether Fox's counsel acted in a professionally competent manner. *See Bouye,* 699 N.E.2d at 623. Therefore, we conclude that Fox has not shown that his trial counsel was ineffective. *See id.*

### B.

Next, Fox argues that his counsel was ineffective because his counsel failed to disclose that an attorney working for his firm was married to a deputy prosecutor working in the county in which he was tried. Specifically, he claims the marriage created a relationship between the offices that prohibited his attorney from having undivided loyalty to him, thus depriving him of his right to a fair trial.

Fox asserts that his attorney worked at a firm that employed another attorney named Mike Lohorn. Gail Schaffer, Fox's sister, found out just prior to Fox's sentencing that Lohorn was married to the chief deputy prosecuting attorney in Crawfordsville. Fox complains that his counsel should have told him about the relationship between his counsel's firm and the prosecutor's office pursuant to Prof. Cond. R. 1.7.[3]

We must first determine whether Fox's counsel's failure to disclose that an attorney working for his firm was married to a deputy prosecutor relationship was outside the range of professionally competent assistance. This question is one of first impression in Indiana.[4] Indiana Rule of Professional Conduct 1.8(i) addresses this situation. It provides in relevant part:

"A lawyer related to another lawyer as parent, child, sibling or spouse shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the oth-

---

**3.** The comments to Prof. Cond. R. 1.8 read: *"Related lawyers in the same firm* are governed by Rules 1.7, 1.9, and 1.10." Prof. Cond. R. 1.8 cmt (emphasis added). Prof. Cond. R. 1.7 is a general conflict of interest rule.

**4.** Fox cites *Haak v. State* to support his contention that his attorney had divided loyalty in representing him. *Haak v. State,* 275 Ind.

415, 417 N.E.2d 321 (Ind.1981). We conclude that *Haak* is not applicable here because it dealt with the relationship between a *juror* and the prosecutor's office. *Id.* at 418, 417 N.E.2d at 322. Our supreme court's holding in *Haak* is limited to the implied bias of a juror and did not address the issue in this case. *Id.* at 426, 417 N.E.2d at 327.

er lawyer except upon consent by the client after consultation regarding the relationship."

Ind. Professional Conduct Rule 1.8(i). The comments to this rule clarify the effect of family relations between lawyers. The comment states in relevant part:

> "Rule 1.8(i) applies to related lawyers who are in different firms.... The disqualification stated in Rule 1.8(i) is *personal and is not imputed to members of firms with whom the lawyers are associated.*"

Prof. Cond. R. 1.8(i) cmt. (emphasis added). The Committee on Ethics and Professional Responsibility of the American Bar Association has issued a formal opinion relating to this issue. It provides in relevant part:

> "[I]t is not necessarily improper for a law firm having a married partner or associate to represent clients whose interests are opposed to those of other clients represented by another law firm with which the married lawyer's spouse is associated as a lawyer."

ABA Comm. on Ethics and Professional Responsibility, Formal Op. 340 (1975).[5]

We conclude that the applicable rule of Professional Conduct here is Prof. Cond. R. 1.8(i). The comments to that rule clarify that disqualification of related lawyers in different firms is personal and not imputed to members of the firms with whom the lawyers are associated. *See* Prof. Cond. R. 1.8(i) cmt. Therefore, we hold that Fox's attorney was not disqualified merely because an attorney at his firm was married to a deputy prosecuting attorney working in the county where he was tried. *See id.* Moreover, under Prof. Cond. R. 1.8(i), Fox's attorney was not required to consult with Fox or obtain his consent regarding the marriage between an attorney at his firm and a deputy prosecutor before agreeing to represent Fox. *See id.* Therefore, Fox counsel's performance was objectively reasonable under the prevailing professional norms. *See Brown,* 698 N.E.2d at 1139. Moreover, Fox has not alleged or shown adverse prejudice as a result of his counsel's performance.[6] *See id.* Thus, we conclude that Fox's counsel was not ineffective with regard to his failure to notify Fox that an attorney working for his firm was married to a deputy prosecutor. *See id.*

### III.

■ The third issue is whether the trial court's jury instruction on reasonable doubt constituted fundamental error. Our supreme court has held that where the defendant does not make a timely objection to the jury instructions, the issue is

---

5. In *DeBolt v. Parker,* the New Jersey Superior Court noted its Supreme Court Advisory Committee on Professional Ethics' consideration of the issue in this case. It stated:
> "In opinion No. 434, it addressed the propriety of an attorney's practice of criminal law when one of his associates was married to an assistant prosecutor in the same county. The Committee found no impropriety in his continued criminal practice. It said:
> > On one level, the public has come to recognize that married partners are independent individuals fully capable of pursuing separate professional careers. Hence it is unlikely that either spouse here would be regarded as the alter ego of the other for purposes of establishing an improper alliance between their respective offices."

*DeBolt v. Parker,* 234 N.J.Super. 471, 477, 560 A.2d 1323, 1326 (1988) (citations omitted).

6. Fox also asserts that after his trial, Gail Schaffer, his sister, discovered that Lohorn had previously been a police officer and worked with Detective Rick Wilson, the State's designated witness. Fox has failed to argue or cite to any cases or relevant authority in support of his contention that the relationship between Lohorn and Wilson made his counsel ineffective. Ind. Appellate Rule 8.3(A)(7) requires that the appellant support each contention with an argument, including citations to legal authorities, statutes, and the record for support. *Choung v. Iemma,* 708 N.E.2d 7, 13 (Ind.Ct.App.1999), *reh'g denied.* Failure to present any argument or citations to authority in support of this aspect of Fox's ineffective assistance of counsel contention constitutes a waiver of the alleged error for appellate review. *See id.* 708 N.E.2d at 13.

waived and unavailable for review. *England v. State*, 530 N.E.2d 100, 102 (Ind. 1988). However, where the error is fundamental, a reviewing court may bypass the waiver. *Townsend v. State*, 632 N.E.2d 727, 730 (Ind.1994). Our supreme court has also held that "[t]o qualify as 'fundamental error,' the error must be a substantial blatant violation of basic principles rendering the trial unfair to the defendant." *Id.* The burden is on the appellant to prove that the alleged error occurred, and that the error was fundamental in nature. *Id.*

■ Here, Fox admits that he did not object to the jury instruction at trial. However, Fox claims that the instruction constituted fundamental error because it permitted the jury to convict him based upon a lower standard of proof than is constitutionally required. Therefore, we will review the jury instruction based on his claim of fundamental error.

■ Decisions concerning jury instructions are within the discretion of the trial court. *Travis v. State*, 488 N.E.2d 342, 345 (Ind.1986). A reviewing court will not reverse the trial court unless the error is such that the instructions, taken as a whole, misstate the law or mislead the jury. *Id.*

■ The jury instruction given by the trial court at Fox's trial read as follows:

"The State of Indiana has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases the State's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty. And in criminal cases the law does not require proof that overcomes every possible doubt. If based upon your consideration of the evidence you are firmly convinced that the defendant is guilty of the crimes charged you should find him guilty. If on the other hand you think there's a real possibility that he is not guilty, you should give him the benefit of that doubt and find him not guilty."

Record, pp. 631–632. This instruction is nearly identical to the Federal Judicial Center's proposed instruction regarding reasonable doubt. *Winegeart v. State*, 665 N.E.2d 893, 902 (Ind.1996). That instruction reads as follows:

"[T]he government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you [should] find [him/her] guilty. If on the other hand, you think there is a real possibility that [he/she] is not guilty, you [should] give [him/her] the benefit of the doubt and find [him/her] not guilty."

*Winegeart,* 665 N.E.2d at 902 (Ind.1996). In *Winegeart,* our supreme court endorsed the use of this instruction. *Id.* In commenting on this instruction our supreme court stated that

"[i]t defines [the term reasonable doubt], succinctly, as proof 'that leaves you firmly convinced,' and explains that reasonable doubt is a greater degree of doubt than merely 'possible doubt.' It explains that a juror's choice between guilty and not guilty should be equated to the distinction between 'firmly convinced' of guilt versus 'a real possibility' that the defendant is not guilty."

*Id.* The supreme court continued, stating that it authorized and recommended "that Indiana trial courts henceforth instruct regarding reasonable doubt by giving the above-quoted Federal Judicial Center instruction, preferably with no supplementation or embellishment. We also request that this instruction be added to the next revision of the Indiana Pattern Jury Instructions—Criminal." *Id.*

Because in *Winegeart* our supreme court authorized and recommended an instruction nearly identical to the one used here, we conclude that the trial court did not abuse its discretion in giving this jury instruction in Fox's trial. *See Travis,* 488 N.E.2d at 345. The trial court did not misstate the law or mislead the jury. *See id.* Moreover, Fox was not denied a fair trial. *See Townsend,* 632 N.E.2d at 730.

### IV.

The fourth issue is whether the trial court abused its discretion by admitting a video taped interview of B.H. and A.H., Fox's step daughters, into evidence. Fox argues that the video taped interviews were unreliable because the trial court's determination of admissibility lacked sufficient foundation. Specifically, he argues that the interviews were coercive, there were leading questions, there was a lapse of time between the acts and statements, there was ill will between the witnesses and Fox, and there was no supporting testimony outside of the prosecutor's own assertions.

▆ We review admissibility determinations by the trial court for an abuse of discretion, and reversal is appropriate only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State,* 678 N.E.2d 386,

390 (Ind.1997), *reh'g denied.* The admission of evidence is subject to a harmless error analysis. Ind. Trial Rule 61; *Biberstine v. State,* 632 N.E.2d 377, 379 (Ind.Ct. App.1994), *trans. denied.* Indiana Code § 35–37–4–6 governs the admissibility of a video tape of a "protected person." Admission of a video tape may be harmless error if it is no more than cumulative of the statements of a witness and the tape is not the only direct evidence of the events. *Pierce v. State,* 677 N.E.2d 39, 45 (Ind. 1997).

▆ Here, B.H. and A.H. were interviewed by a detective regarding the molestation. The interview was recorded. In addition, both A.H. and B.H testified at trial. The trial court admitted the video tape of the interview pursuant to I.C. § 35–37–4–6. The video tape is not the only direct evidence of the events. Without deciding whether the video tape was properly admitted, the trial court's admission of the video tape was cumulative because B.H. and A.H. testified at trial.[7] *See Pierce,* 677 N.E.2d at 45. Therefore, any error alleged by Fox regarding admissibility is harmless. *See* T.R. 61; *Pierce,* 677 N.E.2d at 45; *Biberstine,* 632 N.E.2d at 379. Fox has not established reversible error with regard to this issue. *See Joyner,* 678 N.E.2d at 390. Consequently, we decline to address whether the video tapes were reliable.[8]

For the foregoing reasons, we affirm Fox's convictions.

Affirmed.

DARDEN, J., and ROBB, J. concur.

---

7. Fox claims that the statements in the video tape are contradicted by the victims' testimony in court. However, Fox does not direct us to any evidence in the record that shows the statements were inconsistent, nor does he include a copy of the video tape in the record. Thus, Fox has made no showing that the video tape was more than cumulative of the statements A.H. & B.H. made during trial.

8. Because Fox has not established reversible error, we do not address his assertion that he should have been given an opportunity to cross examine the witnesses during the admissibility hearing. Nor do we address whether Fox was denied the right to notice of intent to introduce the video tape.