**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 26 2013, 5:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ALAN K. WILSON**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERRY DONALD RUTLEDGE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A05-1302-CR-70 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**APPEAL FROM THE DELAWARE CIRCUIT COURT**
The Honorable Linda Ralu Wolf, Judge
Cause No. 18C03-1112-MR-1

**December 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Terry Donald Rutledge appeals his conviction for murder. Rutledge raises three issues, which we consolidate, revise, and restate as:

I.      Whether the trial court abused its discretion in instructing the jury; and

II.     Whether the court abused its discretion by admitting evidence of certain text messages.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the morning and into the early afternoon of December 2, 2011, Rutledge was in the company of Tonia Ingram, as documented by surveillance cameras at a bus station and at Wal-Mart. That same day, between 3:29 p.m. and 5:39 p.m., a phone number ending in 2549, which is a phone number associated with Rutledge, sent several text messages to Regina Miller, a woman with whom Rutledge had a "friends with benefits" relationship, asking for help "with something asap" and noting that he "[c]ant [sic] say" what the issue was. Transcript at 222; State's Exhibit 30. At around 5 p.m., Rutledge phoned another friend, Jada Edwards, using the 2549 phone number, and he told Edwards that a "bitch-ass n----- . . . set [him] up" and that he had "just accidentally killed this bitch-ass n-----." Transcript at 276. He asked Edwards if she could pick him up and take him to Anderson and offered her $250 to do so. Edwards responded that she was working, could not leave her employees, and declined. Edwards thought it was "really strange" that Rutledge would offer her $250 for a ride. Id. at 279. Rutledge told Edwards that he would call somebody else, and later, when Edwards called Rutledge back to inquire whether he had secured transportation, Rutledge told her that "everything

2

was fine." Id. That same day, the phone number of Tina Williams sent a series of text messages to Miller's phone number in which the first message, sent at 5:15 p.m., stated "where u at this terry." State's Exhibit 32-32A.

At around 4 a.m. on December 3, 2011, neighbors of Miller heard a loud noise and observed a red Blazer back up to the rear door of her home. A neighbor heard a tapping noise and looked out his window, and he observed a candle light and an arm making a hammering motion through a basement window of Miller's home.

At around 7:45 a.m. on December 3, 2011, a 911 dispatcher received a phone call about a body burning on Bunch Boulevard. Officers Ryan Yeager and Steve Baugh responded to the dispatch and observed what appeared to be a mannequin on fire. Upon putting out the fire, they realized that it was a dead body. The body was identified as Ingram. An autopsy revealed that the cause of Ingram's death was asphyxia by neck compression and that she was not alive at the time her body was set on fire.

During the police investigation, police collected various items from Miller's address as well as another location, including a glove and articles of clothing with blood stains on them. Blood stains were observed in the basement of Miller's home, as well as fingernail clippings. Outside of Miller's residence, police recovered a purse containing Ingram's identification from a trash container. Also, on December 4, 2011, police searched a red Blazer located at a local wrecker service and discovered that the tire tread on the vehicle was consistent with the tread marks at the scene where Ingram's body was found. Ingram's blood was found on the front passenger door and on the back of the driver's seat. DNA testing of the glove revealed that both Rutledge's and Ingram's DNA

3

were present. DNA testing of a t-shirt which had been recovered was found to contain both Ingram's blood as well as semen from Rutledge. The fingernail clippings matched Ingram's DNA profile. Another pair of gloves contained Rutledge's DNA on one glove and Ingram's DNA on the other.

On December 9, 2011, the State charged Rutledge with Count I, murder; and Count II, obstruction of justice as a class D felony. On November 26, 2012, the court commenced a jury trial at which evidence consistent with the foregoing was presented. During the trial, the State introduced, and the court admitted, transcripts of text messages exchanged between the 2549 phone number attributed to Rutledge and the phone number attributed to Miller. In addition, transcripts of text messages exchanged between Tina Williams's phone number and Miller's phone number were admitted into evidence. The first of the text messages sent from Williams's phone stated: "where u at this terry." State's Exhibit 32A.

Prior to closing argument, the State tendered three jury instructions and Rutledge tendered six jury instructions. Defendant's Proposed Instruction 5 ("Instruction No. 5") was an instruction on motive which "was obtained or is part of the California Pattern Jury Instructions . . . ." Transcript at 817. Defense counsel explained to the court that "a major part of our defense in this case has been to show that Regina Miller is the murderer" and he "felt it was our obligation to offer further instruction on motive." Id. at 818. The court granted in part Instruction No. 5. Defense counsel also tendered, as Defendant's Proposed Instruction 6 ("Instruction No. 6"), an instruction regarding the presumption of innocence based upon Robey v. State, 454 N.E.2d 1221 (Ind. 1983). The

4

court did not accept Instruction No. 6, noting that the tendered instruction was incomplete and that it was covered by other instructions.

On December 4, 2012, the jury found Rutledge guilty as charged. The court held a sentencing hearing on January 14, 2013, and sentenced Rutledge to sixty-two years executed on the murder conviction and three years executed on Count II to be served consecutive to Count I.[1] Thus, Rutledge was sentenced to an aggregate term of sixty-five years in the Department of Correction.

## I.

The first issue is whether the court abused its discretion in instructing the jury. Generally, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Overstreet v. State, 783 N.E.2d 1140, 1163 (Ind. 2003), cert. denied, 540 U.S. 1150, 124 S. Ct. 1145 (2004). Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. Id. at 1163-1164. When reviewing the refusal to give a proposed instruction, this court considers: (1) whether the proposed instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether other instructions already given cover the substance of the proposed instruction. Driver v. State, 760 N.E.2d 611, 612 (Ind. 2002). To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate

---

[1] We note that Rutledge does not appeal his conviction under Count II.

the law or otherwise mislead the jury. Benefiel v. State, 716 N.E.2d 906, 914 (Ind. 1999), reh'g denied, cert. denied, 531 U.S. 830, 121 S. Ct. 83 (2000).

Before a defendant is entitled to a reversal, he or she must affirmatively show that the erroneous instruction prejudiced his substantial rights. Lee v. State, 964 N.E.2d 859, 862 (Ind. Ct. App. 2012) (citing Gantt v. State, 825 N.E.2d 874, 877 (Ind. Ct. App. 2005)), trans. denied. An error is to be disregarded as harmless unless it affects the substantial rights of a party. Id. (citing Oatts v. State, 899 N.E.2d 714, 727 (Ind. Ct. App. 2009); Ind. Trial Rule 61). "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." Id. at 862-863 (quoting Dill v. State, 741 N.E.2d 1230, 1233 (Ind. 2001)).

Rutledge makes two distinct claims that the court abused its discretion in instructing the jury, namely: (A) by rejecting Rutledge's proposed jury instruction regarding the presumption of innocence; and (B) by presenting to the jury the first two sentences only of his proposed instruction regarding motive. We address each of Rutledge's arguments separately.

A.    Presumption of Innocence

At trial, Rutledge tendered Instruction No. 6, which stated as follows:

> If the evidence in this case is susceptible of two constructions and interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the accused, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which is consistent with the accused's innocence and reject that which points to his guilt.

Appellant's Appendix at 294. The court refused to give Instruction No. 6, noting that the tendered instruction was incomplete and that it was covered by other instructions.

Rutledge argues that the trial court failed to comply with the Indiana Supreme Court's opinion in Robey when it refused to give the tendered instruction. Rutledge argues that Instruction No. 6 should have been read to the jury because it was a correct statement of the law, was supported by the evidence presented, and was not covered by the other instructions. Specifically, Rutledge argues that there was ample evidence in the record suggesting that Miller killed Ingram and not Rutledge and that accordingly the second prong of the test was met. He argues regarding the first prong that "the tendered instruction reads almost identically to the instruction in *Robey*, although the *Robey* instruction contains a second but probably unnecessary paragraph." Appellant's Brief at 14. He also maintains that the language of Instruction No. 6 was not addressed by the court's final jury instructions, highlighting that the instructions did not address "the situation in which the Jury in this case encountered two equally plausible and reasonable explanations for the victim's death." Id. Rutledge maintains that "the tendered instruction is the equivalent of the instruction that *Robey* says must be given if requested" and that the "court's failure to give this routine instruction was unjustified, was against the logic and effect of the facts and circumstances before the Court, and was therefore an abuse of discretion . . . ." Id. at 14-15.

The State argues that the "proffered instruction is incomplete, as it omits the second paragraph from the instruction in *Robey*, and thus, his proposed instruction failed to inform the jury that they could in fact conclude that one of the two opposing

7

conclusions was unreasonable," and it notes that accordingly, the court's refusal to give the instruction was proper "on this basis standing alone." Appellee's Brief at 6-7 (citing Matheny v. State, 983 N.E.2d 672, 679-680 (Ind. Ct. App. 2013), aff'd on reh'g by 987 N.E.2d 1169 (Ind. Ct. App. 2013), trans. denied; Simpson v. State 915 N.E.2d 511, 520 (Ind. Ct. App. 2009), trans. denied). The State also argues that the court's refusal "was proper because it was adequately covered by the trial court's instructions," cites to a number of the final jury instructions, and asserts that they "conveyed *Robey's* holding that the presumption of innocence continues throughout trial." Id. at 7, 9.

This court recently addressed this issue in Matheny. The defendant in Matheny tendered an instruction which read:

> Under the law of this state, a person charged with a crime is presumed to be innocent. This presumption continues in favor of the accused throughout the trial of this cause. To overcome the presumption of innocence, the State must prove the accused guilty of each essential element of the crime charged, beyond a reasonable doubt.

> Defendant is not required to present any evidence to prove his innocence or to prove or explain anything. You should attempt to fit the evidence to the presumption that the Defendant is innocent.

> If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to be reasonable, and one of which points to the guilt of the Defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which is consistent with his innocence and reject that which points to his guilt.

983 N.E.2d at 678-679. The parties acknowledged the Indiana Supreme Court's holding in Robey "that '[a]n instruction . . . which advises the jury that the presumption of innocence prevails until the close of the trial, and that it is the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence if they could do so,

8

must be given if requested,'" and that this instruction tracked much of the language in Robey. Id. at 679 (quoting Robey, 454 N.E.2d at 1222).

On appeal, the State argued that Matheny's tendered instruction was an incomplete statement of the law, and we agreed. Id. at 679-680. Specifically, we noted the third paragraph of the tendered instruction was incomplete without the following companion paragraph:

> You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt.

Id. at 680 (quoting Simpson, 915 N.E.2d at 519-520 (quoting Robey, 454 N.E.2d at 1222)). We held that the court did not abuse its discretion in refusing to give the instruction.

Here, the instruction tendered by Rutledge is almost identical to the language contained in the third paragraph of the tendered instruction in Matheny. We therefore conclude, based upon our previous statements in Matheny and Simpson, that the court did not abuse its discretion in refusing to give Instruction No. 6.

B.    Motive

Rutledge also tendered Instruction No. 5, which stated:

> Motive is not an element of the crimes charged and need not be proven by the State. However, in your deliberations you may consider motive or lack of motive as a circumstance in this case. Presence of motive in the accused or in Regina Miller may tend to establish that person's guilt.

9

Absence of motive in the accused or in Regina Miller may tend to negate that person's guilt. The weight, if any, to be given the presence or absence of motive is for you to determine.

Appellant's Appendix at 293. The court granted Instruction No. 5 in part and included the first two sentences of Instruction No. 5 as Final Instruction No. 15 as follows: "Motive is not an element of the crimes charged and need not be proven by the State. However, in your deliberations you may consider motive or lack of motive as a circumstance in this case." Id. at 313. The court also read, as Final Instruction No. 14, the following instruction regarding motive: "Motive is what causes a person to act. The State is not required to prove a motive for the crime charged." Id. at 312.

Rutledge argues that the court abused its discretion when it decided to give only the first two sentences of Instruction No. 5, noting that when defense counsel proffered the instruction at trial, counsel "noted that this is a California Pattern instruction, and similar instructions are used in a few other states as well." Appellant's Brief at 16. Rutledge acknowledges that he "can find no Indiana case discussing this full instruction," but argues that "its use would have been highly appropriate in this case, where the State could provide absolutely no motive or reason for [him] to kill the victim, but . . . Regina Miller had ample motive to do so." Id. The State argues that "the Indiana Supreme Court has previously stated that 'the trial court is not obligated to give a motive instruction . . . .'" Appellee's Brief at 9 (quoting Wilson v. State, 268 Ind. 112, 120, 374 N.E.2d 45, 49 (1978)). The State also argues that "[t]he second part of Rutledge's motive instruction singled out specific evidence by referring to Regina Miller in contravention of the well-established principle that jury instructions should not single out 'specific

evidence,'" and that the court "properly excluded this portion of the instruction." Id. at 10 (quoting Robinson v. State, 262 Ind. 463, 467, 317 N.E.2d 850, 853 (1974)). Rutledge argues in his reply brief that the Indiana Supreme Court has "recognized that the lack of a motive tends to exculpate a defendant," and that "the truncated instruction given by the court is almost meaningless." Appellant's Reply Brief at 2-3 (citing Slater v. State, 224 Ind. 627, 637, 70 N.E.2d 425, 429 (1947) ("Where reliance is placed entirely upon circumstantial evidence to establish a crime and it establishes a strong lack of motive, its absence is a powerful circumstance tending to clear the accused from blame.")).

This court has explained that "the purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Marks v. State, 864 N.E.2d 408, 411 (Ind. Ct. App. 2007) (internal quotations omitted). As noted by the State, "instructions that unnecessarily emphasize one particular evidentiary fact, witness, or phase of the case have long been disapproved." Dill, 741 N.E.2d at 1232 (citing Perry v. State, 541 N.E.2d 913, 917 (Ind. 1989); Patrick v. State, 516 N.E.2d 63, 65 (Ind. 1987); Coleman v. State, 465 N.E.2d 1130, 1133 (Ind. 1984); Fehlman v. State, 199 Ind. 746, 755, 161 N.E. 8, 11 (Ind. 1928); Danville Trust Co. v. Barnett, 184 Ind. 696, 700, 111 N.E. 429, 431 (1916)); see also Robinson, 262 Ind. at 467, 317 N.E.2d at 853 ("[I]t is better in all cases for the trial judge not to pick out in instructions specific evidence or particular witnesses and comment upon the weight or consideration to be given to such matters."). Regarding motive, the Indiana Supreme Court has observed that it is proper that a trial court instruct a jury that "motive is not one of those essential elements of a

11

crime which must be proved by the state, although it is a matter that may be considered by the jury along with other circumstances." Robinson, 262 Ind. at 467, 317 N.E.2d at 853. The Court in Robinson specifically held that a "trial court is not obligated to give a motive instruction, *particularly one which picks out items of evidence and attempts to tell the jury the weight to be given thereto*." Id. (emphasis added).

The deleted portion of Rutledge's Instruction No. 5 contains the type of information which the Court has determined as erroneous to include in a jury instruction in the State of Indiana. The deleted portion unnecessarily emphasizes the possibility that a motive existed with regard to Regina Miller, and it suggests that the existence of a motive on her part "may tend to negate" the possibility of Rutledge's guilt. Appellant's Appendix at 293. Although the final portion of the deleted language directs that the weight of the presence or absence of motive was for the jury to determine, the other deleted sentences suggest the opposite. We conclude that the court did not abuse its discretion when it deleted the final three sentences of Instruction No. 5 and instructed the jury that "Motive is not an element of the crimes charged and need not be proven by the State. However, in your deliberations you may consider motive or lack of motive as a circumstance in this case." Id. at 313. Finally, contrary to Rutledge's suggestion in his reply brief that the instruction as given was "almost meaningless," as noted above we find that it was an accurate description of the law in Indiana. We conclude that the court did not abuse its discretion in instructing the jury.

12

II.

The next issue is whether the court abused its discretion by admitting evidence of certain text messages. We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. Roche v. State, 690 N.E.2d 1115, 1134 (Ind. 1997), reh'g denied. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied.

Rutledge concedes that the "texts were highly incriminating of [him], if he, in fact, sent the texts." Appellant's Brief at 18. He disputes "the relevance of the texts," arguing specifically that "if the texts were sent by someone other than [him], they would be irrelevant to the issue of his guilt, except to the extent that they tend to show that *someone else* committed the murder." Id. Rutledge maintains that "[t]he State simply failed to lay a proper foundation for the introduction of this evidence, and the trial court abused its discretion in admitting it." Id. In so arguing, Rutledge notes that there was a "total lack of proof that [he] had sent the texts," and "[t]he only evidence in this regard was that [he] had sometimes used a phone from which some of the texts were sent." Id. The State argues that there was sufficient evidence linking Rutledge to the phones from which the text messages were sent.

When the substance of a text message is offered for an evidentiary purpose, the text message must be separately authenticated pursuant to Ind. Evidence Rule 901(a).

13

Hape v. State, 903 N.E.2d 977, 990 (Ind. Ct. App. 2009), trans. denied.  Rule 901

provides that "[t]he requirement of authentication or identification as a condition

precedent to admissibility is satisfied by evidence sufficient to support a finding that the

matter in question is what its proponent claims."  Absolute proof of authenticity is not

required.  Fry v. State, 885 N.E.2d 742, 748 (Ind. Ct. App. 2008), trans. denied.  When

evidence establishes a reasonable probability that an item is what it is claimed to be, the

item is admissible.  Thomas v. State, 734 N.E.2d 572, 573 (Ind. 2000).  Ind. Evidence

Rule 901(b) provides "[b]y way of illustration only, and not by way of limitation, the

following are examples of authentication or identification conforming with the

requirements of this rule" and includes:

> Telephone conversations. Telephone conversations, by evidence that a call
> was made to the number assigned at the time by the telephone company to a
> particular person or business, if (i) in the case of a person, circumstances,
> including self-identification, show the person answering to be the one
> called, or (ii) in the case of a business, the call was made to a place of
> business and the conversation related to business reasonably transacted
> over the telephone.

Ind. Evidence Rule 901(b)(6).

Here, the record reveals that a first set of text messages was sent on December 2,

2011, between 3:29 p.m. and 5:39 p.m. from the 2549 phone number, which Jada

Edwards identified as Rutledge's phone number, to Miller's phone number.  At trial,

Edwards testified that Rutledge had also both called her and sent her text messages from

the 2549 phone number on the afternoon of December 2, 2011, between 3:54 p.m. and 5

p.m.  During the police investigation, Detective Melissa Pease filed a preservation

request of Miller's phone, and at trial Detective Pease confirmed Miller's phone number.

14

Regarding a second set of text messages, exchanged between Tina Williams's phone number and Miller's phone number, the evidence presented reveals that the first message was sent the same day, December 2, 2011, at 5:15 p.m., stating: "where u at this terry." Transcript at 287, 350; State's Exhibits 32-32A. Another message from Williams's phone number was sent to Miller's phone number at 5:40 p.m. stating: "U almost home." Transcript at 351; State's Exhibit 32A. Also, a message was sent from Williams's number to Miller's number at 6:14 p.m. stating: "U can text my phone now its charged damn where u at Mz. Williams." Transcript at 352; State's Exhibit 32B. Miller responded at 6:16 p.m. to Williams's phone number stating: "Tryin to leave work. Wassup." Transcript at 353; State's Exhibit 33. Also, at trial Williams confirmed that the phone number associated with her was her phone number, testified that she allowed Rutledge to use her phone "all the time," and noted that he would do so without asking Williams beforehand. Transcript at 287. She testified that on December 2, 2011, Rutledge came over to her house between 4:00-5:00 p.m.

We conclude that the evidence presented established a reasonable probability that it was Rutledge who sent the text messages both from his phone number as well as from Williams's phone number, and that accordingly the court did not abuse its discretion in admitting the evidence.[2]

---

[2] We note that the State in its brief raises an additional issue that "[a]ny error in the trial court's instructions or admission of evidence was harmless in light of the overwhelming evidence of Rutledge's guilt." Appellee's Brief at 12. Because we affirm the trial court regarding both the jury instruction and admission of evidence issues, we need not address this argument.

## CONCLUSION

For the foregoing reasons, we affirm Rutledge's conviction for murder.

Affirmed.

ROBB, C.J., and BARNES, J., concur.