



FILED
Jun 06 2024, 8:34 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

McKinley Kelly,

*Appellant-Petitioner*

v.

State of Indiana,

*Appellee-Respondent*

---

June 6, 2024

Court of Appeals Case No.
23A-PC-1025

Appeal from the Lake Superior Court

The Honorable Gina L. Jones, Judge

The Honorable Mark S. Watson, Magistrate

Trial Court Cause No.
45G03-2002-PC-7

---

**Opinion by Judge Tavitas**
Judges Mathias and Weissmann concur.

**Tavitas, Judge.**

## Case Summary

[1]  McKinley Kelly was sentenced to 110 years for two murders he committed in 1996, when Kelly was sixteen years old.  Kelly's direct appeal, petition for post-conviction relief, and petitions for habeas corpus relief in federal court were unsuccessful, and Kelly requested permission to file a successive petition for post-conviction relief, which this Court allowed.  Kelly now appeals the denial of his successive petition for post-conviction relief by the post-conviction court ("PC Court").  Kelly raises multiple issues, including claims under the United States Constitution and Indiana Constitution, a claim of newly discovered evidence due to advances in juvenile brain development science, and a request that his sentence be reduced pursuant to Indiana Appellate Rule 7(B).  According to Kelly, he is entitled to successive post-conviction relief because "advancements in neuroscience and developmental psychology [have] established that children are both less culpable and more capable of rehabilitation than adults," and "those scientific advancements led to a sea change in the law . . . ."  Appellant's Br. p. 20.  We, however, do not find the PC Court's denial of Kelly's petition to be clearly erroneous.  Accordingly, we affirm.

## Issues

[2]  Kelly raises multiple issues, which we revise and restate as follows:

I. Whether issues raised in Kelly's amended successive petition for post-conviction relief but not raised in his initial petition are waived.

II. Whether Kelly's sentence violates his rights under the Eighth Amendment to the United States Constitution.

III. Whether Kelly's sentence violates his rights under Article 1, Section 16 of the Indiana Constitution.

IV. Whether Kelly is entitled to post-conviction relief due to his claim of newly discovered evidence.

V. Whether Kelly is entitled to a revised sentence pursuant to Indiana Appellate Rule 7(B).

## Facts

[3] The facts as set forth in our Supreme Court's opinion on Kelly's direct appeal follow:

> Late in the evening of January 8, 1996, Elisha Woodward, Terrell Brown, Leo Dent, and McKinley Kelly ("Defendant") were riding in Woodward's Chevy Blazer in East Chicago.
>
> The group drove to a liquor store where Woodward purchased beer and gin. While at the store, Defendant and Brown got into an Oldsmobile which was located at the liquor store but owned by Woodward. They drove around, listening to music and not talking for approximately 45 minutes. Woodward and Dent remained in the Blazer and the two vehicles trailed each other, circling the neighborhood for a period of time. The men ended up at a housing project on 151st street where Maurice Hobson, Karl Jackson, and Vincent Ray were standing in a driveway.

Defendant and Brown were in the lead car at this time and they stopped and parked in the front end of the driveway. Woodward and Dent pulled in behind them and parked the Blazer at the back end of the driveway.

Defendant got out of the car and confronted Jackson. They argued and Defendant pulled a revolver from his waist and shot Jackson, killing him. Jackson fell to the ground and Defendant continued to shoot as he stood over him. Jackson died from these wounds.

Woodward remained near the Blazer during this exchange while Dent, carrying a shotgun, walked toward where Defendant was shooting Jackson. Meanwhile, Hobson approached Defendant and asked him why he shot Jackson. Brown turned to run away and heard two more shots, one sounding like the revolver again and another sounding like a shotgun. Hobson was shot in the head and chest with the revolver and in the chest with a shotgun. Hobson died from these wounds. Brown did not see Hobson get shot, but heard the blasts and saw Dent and Defendant with the guns.

Brown returned to the car and he and Defendant drove off in the Oldsmobile. Brown heard another shotgun blast when he and Defendant were just about one house down from the scene. Dent had shot Vincent Ray, who was later found dead at the scene from a shotgun wound to the head and neck.

The State charged Defendant with three counts of Murder and a jury found Defendant guilty of all three counts. The trial court judge granted Defendant's motion for judgment on the evidence as to the murder of Vincent Ray (the third shooting—when Defendant and Brown had left the scene), and vacated that one conviction. The trial court sentenced Defendant to 55 years for

each of the two remaining Murder convictions, the sentences to be served consecutively.

*Kelly v. State*, 719 N.E.2d 391, 393-94 (Ind. 1999).[1]

[4] On direct appeal, Kelly argued that the evidence was insufficient to sustain his convictions and that his 110-year sentence was manifestly unreasonable under former Indiana Appellate Rule 17(B). Our Supreme Court concluded that the evidence was sufficient to sustain Kelly's convictions. Regarding Kelly's sentence, the Court held:

> At the time Defendant committed these crimes, Murder carried a presumptive 55 year sentence, with not more than ten years added for aggravating circumstances and not more than ten years subtracted for mitigating circumstances. *See* Ind. Code § 35-50-2-3 (Supp. 1995). At the sentencing hearing, the trial court identified six aggravating circumstances: (1) Defendant was on probation with the Juvenile Court at the time of the crimes; (2) Defendant fired the first shot and his shots killed the first victim, setting the subsequent murders in motion; (3) Defendant shot the victims at close range; (4) the murders evince Defendant's lack of respect for human life; (5) there was a risk that Defendant would commit future crimes; and (6) Defendant killed more than one person. In addition, the court noted that the imposition of concurrent sentences would "depreciate the seriousness of the crimes."

---

[1] The trial court sentenced Dent to 100 years. Dent's direct appeal, post-conviction proceedings, and successive post-conviction proceedings are detailed in *Dent v. State*, No. 22A-PC-1032 (Ind. Ct. App. Feb. 2, 2023) (mem.).

The trial court also identified two mitigating circumstances: (1) Defendant was sixteen years old at the time of the offense and seventeen years old at the time of sentencing; and (2) Defendant had no adult or felony convictions.

* * * * *

Defendant argues that the record shows he was under the direction and control of his older brother, Woodward, and that Woodward's influence was a strong mitigating circumstance not considered by the court. However, in his sentencing hearing arguments, Defendant's counsel focused on Defendant's age as a mitigating circumstance but did not emphasize the nature of Woodward's control or influence on Defendant. Despite its long list of identified and recognized aggravating circumstances, the trial court imposed the presumptive, rather than an aggravated, sentence for each murder.

The trial court properly outlined its reasoning for Defendant's sentences, and adequately balanced the aggravating and mitigating circumstances with which it was presented, when it imposed consecutive, presumptive 55 year sentences for Defendant's two Murder convictions.

*Id.* at 395 (record citation omitted).

[5] After our Supreme Court affirmed Kelly's conviction and sentence, Kelly filed a petition for post-conviction relief and argued that he received ineffective assistance of trial and appellate counsel. The post-conviction court denied Kelly's petition. On September 15, 2004, this Court affirmed the post-conviction court's denial of Kelly's petition, and our Supreme Court denied

transfer on December 9, 2004. *See Kelly v. State*, No. 45A03-0402-PC-64 (Ind. Ct. App. Sept. 15, 2004) (mem.), *trans. denied*.

[6] Kelly sought relief in federal district court by filing a writ of habeas corpus pursuant to 28 U.S.C. § 2254, but the district court denied Kelly's petition. *Kelly v. Davis*, No. 3:05 CV 0206 AS, 2005 WL 2562986, at *2 (N.D. Ind. Oct. 11, 2005). Kelly later filed an application seeking authorization to file a successive petition for writ of habeas corpus. Kelly sought "to challenge his sentence under *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L.Ed.2d 407 (2012) . . . ." *Kelly v. Brown*, 851 F.3d 686, 687 (7th Cir. 2017). The Seventh Circuit noted that "*Miller* applies not just to sentences of natural life, but also to sentences so long that, although set out as a term of years, they are in reality a life sentence." *Id.* (citing *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016)). The Seventh Circuit rejected Kelly's argument and held that "Kelly was afforded all he was entitled to under *Miller*." *Id.* The Court noted that "[t]he sentencing court had considerable leeway in fashioning Kelly's sentence and in fact considered his age when deciding on the appropriate term." *Id.* at 687-88. Accordingly, the Court denied Kelly's request for authorization and dismissed his application to file a successive petition for a writ of habeas corpus.[2]

---

[2] Judge Posner dissented and wrote that Kelly "is effectively serving a life sentence." *Kelly*, 851 F.3d at 688. Judge Posner further found:

> [T]he Supreme Court concluded in *Miller* that a life sentence is unconstitutional for all but the "rare juvenile offender whose crime reflects irreparable corruption." *Miller v. Alabama*, *supra*, 132 S. Ct. at 2469, quoting *Roper v. Simmons*, 543 U.S. 551, 573, 125 S. Ct. 1183, 161 L.Ed.2d 1

In December 2019, Kelly requested permission from this Court to file a successive petition for post-conviction relief. In the attached proposed successive petition for post-conviction relief, Kelly alleged:

> (a) Kelly's sentence is in violation of the Sixth and Eighth Amendments of the United States Constitution and the Indiana Constitution article 1, section 16, and the [h]oldings in *Tatum v. Arizona*, *Montgomery v. Louisiana* and *Miller v. Alabama*.

> (b) Kelly's sentence is in violation of the Sixth and Eighth Amendments of the United States Constitution and the Indiana Constitution article 1, section 16, and the [h]oldings in *Tatum v. Arizona*, *Montgomery v. Louisiana* and *Miller v. Alabama*. Also, failed to raise issue pursuant to Appellate Rule 7 (B) [sic].

---

(2005); *see also Montgomery v. Louisiana*, [577 U.S. 190, 136 S. Ct. 718, 733-34 (2016)]. Yet in sentencing Kelly the trial judge said only one thing relating to his youth when he committed the murders: "The mitigating factors, as far as Mr. Kelly is concerned, is [the judge meant 'are'] the fact that he's 17 years old right now and [was] 16 years [old] at the time he committed this offense." So cursory a statement does not evidence the deliberate reflection on Kelly's character that would be necessary to conclude that he is "irretrievably depraved" and his "rehabilitation is impossible." *Roper v. Simmons*, *supra*, 543 U.S. at 570, 125 S. Ct. 1183; *Montgomery v. Louisiana*, *supra*, 136 S. Ct. at 733. As far as the record reflects, Kelly is a typical youthful offender. We do not know the details of the fight that resulted in his shooting two people, but the judge found that the killings were not planned and were tragic for everyone involved, including Kelly. The judge mused that there "have always been disagreements among young people" and that what would have been a fist fight or a knife fight in years past, today has elevated consequences because of the ubiquity of guns; not the stuff of a crime demonstrating the complete depravity and irredeemability of Kelly.

We should allow him to pursue his *Miller* claim in the district court, which should conduct a hearing to determine whether he is or is not incorrigible.

*Id.* at 689.

Appellant's App. Vol. II pp. 51-52. This Court granted Kelly's request to file his successive petition for post-conviction relief, and Kelly filed his petition with the PC Court on February 4, 2020.

[8] In November 2021, Kelly filed an amended successive petition for post-conviction relief. In the amended petition, Kelly alleged:

> 8(a) [Kelly's] 110-year sentence is a de facto life without parole sentence that violates the Eighth Amendment to the United States Constitution and Article 1, Sections 15, 16, and 18 of the Indiana Constitution.
>
> 8(b) Advances in Developmental Psychology and Neuroscience constitute newly discovered evidence that requires vacation of [Kelly's] 110-year sentence in the interest of justice.
>
> 8(c) [Kelly's] sentence is inappropriate and fundamentally unfair considering the significant changes in the legal landscape since [Kelly] was sentenced.
>
> 8(d) [Kelly's] 110-year sentence violates the Fourteenth Amendment to the U.S. Constitution and Article 1, Section 23 of the Indiana Constitution.

*Id.* at 191-92.

[9] The PC Court held an evidentiary hearing on April 7, 2022. At the beginning of the hearing, the State objected to Kelly presenting certain claims from the amended successive petition, which the State alleged were not specifically authorized by this Court. Kelly responded that: (1) the State failed to object

after the amended successive petition was filed; (2) the added claims relate to the constitutionality of Kelly's sentence, which was raised in the initial successive petition; and (3) the PC Court could allow the amendment of the successive petition. The PC Court allowed Kelly to proceed on the claims raised in the amended successive petition because it found that the amended claims related to the claims made in the initial petition.

[10] At the evidentiary hearing, Kelly called Dr. Daniel Keating, who testified regarding juvenile brain development science and the impact of early life trauma and adversity on brain development. Dr. Keating testified that technological changes since the early 2000s have allowed the study of juvenile brains during development. Kelly also called Dr. Jack Bloom, who testified regarding the conditions in Gary, where Kelly grew up, during the mid-1990s and Kelly's exposure to crime and violence as an adolescent. The PC Court entered findings of fact and conclusions of law and denied Kelly's successive petition for post-conviction relief. Kelly now appeals.

## Discussion and Decision

[11] Kelly challenges the PC Court's denial of his successive petition for post-conviction relief. Post-conviction proceedings are civil proceedings in which a defendant may present limited collateral challenges to a conviction and sentence. *Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019); Ind. Post-Conviction Rule 1(1)(b). When, as here, the petitioner "appeals from a negative judgment denying post-conviction relief, he 'must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-

conviction court's decision.'" *Gibson*, 133 N.E.3d at 681 (quoting *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000)).

[12] When reviewing the PC Court's order denying relief, we will "not defer to the post-conviction court's legal conclusions," and the "findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Bobadilla v. State*, 117 N.E.3d 1272, 1279 (Ind. 2019). When a petitioner "fails to meet this 'rigorous standard of review,' we will affirm the post-conviction court's denial of relief." *Gibson*, 133 N.E.3d at 681 (quoting *DeWitt v. State*, 755 N.E.2d 167, 169-70 (Ind. 2001)).

## I. Kelly's claims raised in the amended petition but not in the initial petition are waived.

[13] We first address the State's argument that the claims raised in Kelly's amended successive petition for post-conviction relief but not raised in the initial successive petition for post-conviction relief are waived. Generally, one convicted of a crime in an Indiana state court can seek collateral review of that conviction and sentence in a post-conviction proceeding only once. *Burkett v. State*, 195 N.E.3d 394, 397 (Ind. Ct. App. 2022) (citing *Baird v. State*, 831 N.E.2d 109, 114 (Ind. 2005); Ind. Post-Conviction Rule 1), *trans. denied*. Following the first petition for post-conviction relief, "[t]o proceed with each 'successive' post-conviction claim, petitioners need court permission, which will be granted if they establish a 'reasonable possibility' of entitlement to post-conviction relief." *Id.* (citing Ind. Post-Conviction Rule 1(12)(a), -(b)).

Here, after obtaining permission from this Court to file a successive petition for post-conviction relief on certain claims, Kelly amended his petition to add additional claims. The PC Court allowed Kelly to present evidence and argument on those additional claims. The PC Court, however, ultimately rejected Kelly's petition for post-conviction relief.

Shortly after the PC Court entered its denial of Kelly's petition, our Court had the opportunity to address the issue of adding new claims to a successive petition in *Burkett*, 195 N.E.3d 394. There, the petitioner sought permission to file a successive petition for post-conviction relief to "challenge the adequacy of the PCR proceedings as well as to again challenge the effectiveness of his post-conviction counsel following remand." *Id.* at 396. This Court, however, denied the petition. The petitioner later filed another request for permission to file a successive petition for post-conviction relief and alleged that the Department of Correction ("DOC") had "wrongfully denied him credit time following his completion of an approved vocational program." *Id.* This Court then granted the request, and the petitioner filed his successive petition for post-conviction relief. He, however, filed three amendments to his petition attempting "to raise issues regarding the adequacy of the prior PCR proceedings and the ineffectiveness of his post-conviction counsel." *Id.* The post-conviction court ultimately denied the petition.

On appeal, we noted that the sole issue raised in "Burkett's successive PCR petition was his allegation that he had not received proper credit time toward his sentence from the DOC based on his completion of a vocational program."

*Id.* at 397.  "This Court granted Burkett permission to proceed on his successive PCR petition based upon this allegation, and this allegation alone."  *Id.*  This Court did not grant Burkett permission to raise the additional claims presented in the amended petitions, and Burkett did not make a showing of a reasonable possibility of post-conviction relief to this Court on the additional claims.  "By permitting successive post-conviction petitions only when the petitioner makes some showing of merit, this appellate screening function reduces the burden on trial courts."  *Id.* (citing *Shaw v. State*, 130 N.E.3d 91, 92 (Ind. 2019)).  We held that "Burkett's attempt to circumvent our appellate screening by simply filing subsequent 'amendments' to his successive PCR petition in order to raise new claims is not well taken and will not be permitted."  *Id.*  Rather, "the only claim that was properly screened and authorized by this Court for consideration by the successive PCR court, as required by Post-Conviction Rule 1(12)(b), was Burkett's claim that the DOC denied him educational credit time."  *Id.*

[17]    Similarly, here, the only claims that Kelly raised in his petition to this Court are as follows:

> (a)  Kelly's sentence is in violation of the Sixth and Eighth Amendments of the United States Constitution and the Indiana Constitution article 1, section 16, and the [h]oldings in *Tatum v. Arizona*, *Montgomery v. Louisiana* and *Miller v. Alabama*.

> (b) Kelly's sentence is in violation of the Sixth and Eighth Amendments of the United States Constitution and the Indiana Constitution article 1, section 16, and the [h]oldings in *Tatum v. Arizona*, *Montgomery v. Louisiana* and *Miller v. Alabama*.  Also, failed to raise issue pursuant to Appellate Rule 7 (B).

Appellant's App. Vol. II pp. 51-52. These are the only claims that Kelly received permission from this Court to raise. Accordingly, Kelly was not permitted to raise additional issues in his amended successive petition for post-conviction relief. *Cf. Azania v. State*, 738 N.E.2d 248, 250 (Ind. 2000) ("Inasmuch as this petition sought successive post-conviction relief, it was procedurally improper to file the petition without authorization from this Court.").

[18] The State raised this issue to the PC Court at the beginning of the evidentiary hearing and argued that Kelly could not present issues regarding the Fourteenth Amendment to the United States Constitution and regarding Article 1, Sections 15, 18, and 23 of the Indiana Constitution.[3] We agree and will not address Kelly's arguments regarding the Fourteenth Amendment to the United States Constitution and regarding Article 1, Sections 15, 18, and 23 of the Indiana Constitution due to Kelly's failure to obtain authorization to file these claims.

[19] Kelly also did not obtain authorization to bring a claim of newly discovered evidence, which would generally bar Kelly's ability to raise this issue. The

---

[3] Kelly argues that the State waived this argument by failing to raise it in the State's answer to Kelly's amended successive petition for post-conviction relief. Kelly, however, did not argue below that the State failed to raise the issue in its answer. Accordingly, we do not address this argument.

Kelly also argues that disallowing amended petitions for successive post-conviction relief puts "indigent petitioners in a worse position than those petitioners who can afford private counsel" because an indigent petitioner is not entitled to representation from the State Public Defenders Office until the successive petition for post-conviction relief is authorized by this Court. Appellant's Reply Br. p. 7. We are unaware, however, of a rule or decision that would prevent the petitioner from seeking permission from this Court to amend their successive petition for post-conviction relief. Here, Kelly did not seek such permission.

State, however, specifically informed the PC Court that it did not object to Kelly's argument that newly discovered evidence existed regarding advances in developmental psychology and neuroscience. Given the State's specific failure to object to Kelly's argument that newly discovered evidence exists, we will address that issue despite Kelly's failure to obtain authorization from this Court to raise the issue.

## II. Kelly's Eighth Amendment Violation Arguments Fail

[20] Kelly argues that his 110-year sentence violates the Eighth Amendment to the United States Constitution. According to Kelly, his sentence is a de facto life sentence because his earliest release date is a "few months shy of his seventieth birthday." Appellant's Br. p. 59. Kelly claims that his "de facto life sentence" violates the United States Supreme Court's opinion in *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455 (2012).

[21] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The United State Supreme Court explained in a series of opinions that the Eighth Amendment bars certain punishments for juvenile offenders. In *Roper v. Simmons*, the Court held that the Eighth Amendment bars capital punishment for juvenile offenders—which it defined as those who committed the offense before age eighteen. 543 U.S. 551, 578, 125 S. Ct. 1183, 1200 (2005). The Court then held that the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Graham v. Florida*, 560 U.S. 48, 82, 130 S. Ct.

2011, 2034 (2010), *as modified* (July 6, 2010). Thereafter, the Court held that the Eighth Amendment also "forbids a sentencing scheme that **mandates** life in prison without possibility of parole for juvenile [murderers]." *Miller*, 567 U.S. at 479, 132 S. Ct. at 2469 (emphasis added). Rather, *Miller* requires that a sentencing court "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480, 132 S. Ct. at 2469. The Court followed up on *Miller* with *Montgomery v. Louisiana*, 577 U.S. 190, 212, 136 S. Ct. 718, 736 (2016), *as revised* (Jan. 27, 2016), which gave retroactive effect to *Miller*. Finally, in *Jones v. Mississippi*, 593 U.S. 98, 113, 141 S. Ct. 1307, 1318-19 (2021), the Court held that *Miller* and *Montgomery* did not require "a separate factual finding of permanent incorrigibility . . . before a sentencer imposes a life-without-parole sentence on a murderer under 18." The Court also held in *Jones* that "an on-the-record sentencing explanation with an implicit finding of permanent incorrigibility" was not required. *Jones*, 593 U.S. at 118, 141 S. Ct. at 1321.

[22] Although Kelly was not sentenced to life without parole, he argues that he received a de facto life sentence and is entitled to the protections announced in *Miller*. Some courts have agreed that *Miller* applies to de facto life sentences. *See, e.g.*, *Kelly*, 851 F.3d at 687. Our Supreme Court, however, rejected this same argument in *Wilson v. State*, 157 N.E.3d 1163 (Ind. 2020). In 2013, sixteen-year-old Wilson was charged with two murders, armed robbery, and conspiracy to commit criminal gang activity, and the State sought a criminal gang enhancement. Wilson was convicted and sentenced to 183 years, which

was later reduced to 181 years on direct appeal. Wilson later sought post-conviction relief based, in part, upon the United States Supreme Court's decision in *Miller*, which the post-conviction court denied. This Court reversed, and our Supreme Court granted transfer.

[23] The Court noted that, "[s]ince *Miller*, a separate split in authority has developed over whether a term of years sentence constitutes a de facto life without parole sentence that implicates *Miller*'s procedural sentencing requirements." *Wilson*, 157 N.E.3d at 1172. After examining the United States Supreme Court's decisions, our Supreme Court held that "*Miller*'s enhanced protections do not currently apply to Wilson's 181-year-sentence. The sentence does not violate the Eighth Amendment because *Miller*, *Graham*, and *Montgomery* expressly indicate their holdings apply only to life-without-parole sentences." *Id.* at 1176; *see also Conley v. State*, 972 N.E.2d 864, 879 (Ind. 2012) (holding that *Miller* "deals solely with the issue of mandatory sentencing schemes requiring life-without-parole for juveniles"). The Court noted that "any attempt to define a de facto life sentence without further guidance from the U.S. Supreme Court would be largely guesswork and would likely require significant (and likely unnecessary) change to Indiana's existing discretionary sentencing scheme." *Id.* Under *Wilson*, Kelly's argument that his sentence violates the Eighth Amendment must fail. Kelly was sentenced to 110 years and will be eligible for parole when he is sixty-nine years old; Kelly was not sentenced to life without parole.

Kelly also argues that our Supreme Court "wrongly decided *Wilson* and *Conley* and the [PC Court] erred in relying on them when it denied relief to [Kelly]." Appellant's Br. p. 60. It is a "well-established principle that this court lacks the ability to overrule Indiana Supreme Court precedent . . . ." *Doroszko v. State*, 154 N.E.3d 874, 877 (Ind. Ct. App. 2020), *trans. denied*. Accordingly, we reject Kelly's invitation to reconsider *Wilson*.

We further note that, even if *Miller* applies to Kelly's 110-year sentence, Kelly presented this same argument regarding the Eighth Amendment to the Seventh Circuit Court of Appeals, and the Seventh Circuit rejected Kelly's argument. The Seventh Circuit held that "Kelly was afforded all he was entitled to under *Miller*." *Kelly*, 851 F.3d at 687. The Court noted that "[t]he sentencing court had considerable leeway in fashioning Kelly's sentence and in fact considered his age when deciding on the appropriate term." *Id.* at 687-88. Accordingly, even if *Miller* applied here, the PC Court's denial of Kelly's claim under the Eighth Amendment is not clearly erroneous. *See, e.g.*, *Wilson*, 157 N.E.3d at 1176 (holding that, even if *Miller* applied to a de facto juvenile life sentence, the sentencing court adequately considered the defendant's youth and attendant circumstances during sentencing).

### III. Kelly's Article 1, Section 16 Violation Arguments Fail

Next, Kelly argues that his sentence is cruel and unusual and disproportionate to the nature of the offense and, thus, violates Article 1, Section 16 of the Indiana Constitution. Article 1, Section 16 of the Indiana Constitution provides, in part: "Cruel and unusual punishments shall not be inflicted. All

penalties shall be proportioned to the nature of the offense." Kelly argues both that his sentence is cruel and unusual and that his sentence is not proportional to the nature of the offense.

## A. Cruel and Unusual Punishment

[27] Article 1, Section 16 of the Indiana Constitution provides, in part: "Cruel and unusual punishments shall not be inflicted." Kelly argues that his 110-year sentence amounts to cruel and unusual punishment due to his age and lack of a meaningful opportunity for release. Our Supreme Court has held that "[t]he constitutional prohibition against cruel and unusual punishments proscribes atrocious or obsolete punishments and is aimed at the kind and form of the punishment, rather than the duration or amount." *Conley*, 972 N.E.2d at 879. "The punishment will be deemed cruel and unusual under Article 1, Section 16 'if it makes no measurable contribution to acceptable goals of punishment, but rather constitutes only purposeless and needless imposition of pain and suffering.'" *Id.* at 879-80 (quoting *Dunlop v. State*, 724 N.E.2d 592, 597 (Ind. 2000)).

[28] "[L]ife imprisonment without parole does not constitute cruel and unusual punishment." *Id.* at 880. In fact, in considering the imposition of life without parole on a juvenile murder defendant, the Court has held that a sentence of life without parole was not unconstitutional under the Indiana Constitution under these circumstances. *Id.* Given our Supreme Court's determination that the imposition of a life without parole sentence on a juvenile murder defendant was not cruel and unusual punishment under Article 1, Section 16, Kelly's argument

that his term-of-years sentence, which gives him the possibility of parole, is cruel and unusual is not well taken. Accordingly, under current precedent, Kelly's argument fails.

## B. Proportional to the Nature of the Offense

[29] Article 1, Section 16 of the Indiana Constitution provides, in part: "All penalties shall be proportioned to the nature of the offense." Kelly argues that "a sentence imposed on a child that denies him a meaningful opportunity for release based on demonstrated maturity and rehabilitation is disproportionate." Appellant's Br. p. 45. Article 1, Section 16's proportionality requirement "goes beyond" the Eighth Amendment's protections and permits us to review the duration of a sentence because it is possible for a sentence within the statutory range to be unconstitutional as applied in a particular instance. *Knapp v. State*, 9 N.E.3d 1274, 1289 (Ind. 2014). Article 1, Section 16's protections, however, "are still narrow." *Id.* The provision is violated "only when the criminal penalty is not graduated and proportioned to the **nature of the offense**." *Id.* (emphasis added).

[30] We addressed a similar argument in *Kedrowitz v. State*, 199 N.E.3d 386, 409 (Ind. Ct. App. 2022), *trans. denied*. There, thirteen-year-old Kedrowitz killed his two younger siblings. He was charged with two counts of murder, found guilty as charged, and sentenced to one hundred years. On appeal, Kedrowitz argued, in part, that his sentence violated Article 1, Section 16 of the Indiana Constitution. Kedrowitz argued that his sentence was disproportionate because of his age, intellectual disability, and social and developmental delays. We held

that "Kedrowitz's argument is based entirely on his personal characteristics, not the 'nature of [his] offense[s.]'" *Id.* Moreover, "there is no authority for the proposition that such an offender-based argument is cognizable pursuant to Article 1, Section 16." *Id.* We rejected Kedrowitz's argument because "the plain language of Article 1, Section 16, requires that, if a sentence is to be found disproportionate, it will be because of the nature of the offenses . . . ." *Id.*

[31] Similarly, here, Kelly's argument is based upon his personal characteristics—his age, maturity since the crime, and rehabilitation since the crime—not the nature of the offenses as required by the Article 1, Section 16 proportionality analysis. Accordingly, under our current precedent, as in *Kedrowitz*, Kelly's argument fails.[4]

---

[4] We note that Chief Justice Rush dissented in the denial of transfer in *Kedrowitz* with Justice Goff joining in the dissent. Chief Justice Rush wrote:

> Both the Eighth Amendment to the United States Constitution and Article 1, Section 16 of the Indiana Constitution prohibit cruel and unusual punishments, including those that are disproportionate to the offense. U.S. Const. amend. VIII; Ind. Const. art. 1, § 16; *see, e.g.*, *Graham v. Florida*, 560 U.S. 48, 59, 130 S .Ct. 2011, 176 L.Ed.2d 825 (2010). Though these provisions contain different language, we have held "the protections are the same." *Conley v. State*, 972 N.E.2d 864, 879 (Ind. 2012). Yet, this case illustrates that juvenile offenders like Nickalas Kedrowitz currently have less protection under our Constitution. Transfer is needed to rectify this gap. *See* Ind. Appellate Rule 57(H)(2), (5).
>
> Kedrowitz invoked Article 1, Section 16 in arguing that his 100-year sentence—imposed for heinous crimes he committed as a thirteen-year-old—is unconstitutional. The Court of Appeals rejected that argument because it was based on only his personal characteristics. *Kedrowitz v. State*, 199 N.E.3d 386, 409 (Ind. Ct. App. 2022). But in the last two decades, the United States Supreme Court has issued a series of decisions recognizing that a juvenile's characteristics— youth and its distinctive attributes—matter when determining whether a sentence violates the Eighth Amendment. *Roper v. Simmons*, 543 U.S. 551, 570-74, 125 S. Ct. 1183, 161 L.Ed.2d 1 (2005); *Graham*, 560 U.S. at 76, 130 S. Ct. 2011; *Miller v. Alabama*, 567 U.S. 460, 479-80, 132 S. Ct. 2455, 183 L.Ed.2d 407 (2012); *Montgomery v. Louisiana*, 577 U.S. 190, 136 S. Ct. 718, 735, 193 L.Ed.2d 599 (2016); *Jones v. Mississippi*, 593 U.S. 98, 141 S. Ct. 1307, 1314, 209 L.Ed.2d 390 (2021). While we have acknowledged this shift when reviewing a juvenile's sentence under

## IV. Kelly's Claim of Newly Discovered Evidence Fails

[32] Next, Kelly argues that, after his 1996 sentencing, advancements in neuroscience and psychological research have shown that juvenile brains are not fully developed, which results in a lack of impulse control and poor decision making in juveniles. Adversity during childhood exacerbates these differences. Juveniles, thus, have a "greater capacity for rehabilitation than adults." Appellant's Br. p. 25. Kelly contends that this scientific evidence and research amount to newly discovered evidence that entitles him to a new sentencing hearing.

[33] Indiana Post-Conviction Rule 1(1)(a) provides:

> Any person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims:

* * * * *

---

Appellate Rule 7(B), *see, e.g.*, *State v. Stidham*, 157 N.E.3d 1185, 1193-94 (Ind. 2020), we have not done so under Section 16.

Thus, by denying transfer, we pass up an important opportunity to clarify that, consistent with Eighth Amendment precedent, a juvenile's characteristics matter when considering whether their sentence violates Article 1, Section 16. And we also pass up an important opportunity to consider whether Kedrowitz's 100-year sentence—a de facto sentence of life without parole—passes constitutional muster. In recent years, several state supreme courts have found that shorter term-of-years sentences imposed on juveniles violate their states' analogous constitutional provisions. *See, e.g.*, *State v. Kelliher*, 381 N.C. 558, 873 S.E.2d 366, 370 (2022); *People v. Stovall*, 510 Mich. 301, 987 N.W.2d 85, 94-95 (2022). We should determine whether Article 1, Section 16 requires a similar result.

*Kedrowitz v. State*, 210 N.E.3d 1284, 1284-85 (Ind. 2023) (mem.) (Rush, C.J., dissenting).

> (4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
>
> * * * * *
>
> may institute at any time a proceeding under this Rule to secure relief.

[34] Our Supreme Court has held that newly discovered evidence "will mandate a new trial only when the defendant demonstrates that":

> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

*Kubsch v. State*, 934 N.E.2d 1138, 1145 (Ind. 2010). We analyze "these nine factors with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." *Id.* The burden of showing that all nine requirements are met rests with the petitioner for post-conviction relief. *Id.*

[35] The PC Court found that the juvenile brain development science was cumulative and would not produce a different result at trial:

> 62. As noted above, the Court found the petitioner's youth to be a mitigator at the sentencing hearing, and notably did not impose the maximum sentence, instead opting to give the presumptive

sentence of fifty-five (55) years on each count. Accordingly, the evidence now proffered by the petitioner as "newly-discovered" would simply have buttressed arguments already made by his trial attorney and previously considered by the Court that sentenced him. Therefore, the evidence is cumulative and the petitioner has not met that prong of the newly-discovered evidence test, as required, to establish his claim.

* * * * *

64. The petitioner also cannot establish the "different result" prong of the newly-discovered evidence test. As noted above, the Court considered the petitioner's youthful age at sentencing and found it to be a mitigating circumstance. The Court imposed a fifty-five (55) year sentence on each count, far less than the maximum of sixty-five (65) years despite finding numerous aggravating factors. Significantly, the Court found the petitioner to be more culpable than his co-defendant, and placed emphasis on the fact that concurrent sentences would depreciate the seriousness of the crime. Therefore, petitioner has also not met his burden of showing that the introduction of evidence regarding adolescent brain development would have changed the result of the sentencing hearing.

Appellant's App. Vol. III pp. 148-49.

## A. New Evidence

The PC Court did not address whether the juvenile brain development science is newly discovered evidence. We note, however, that years before Kelly's offenses and long before the United States Supreme Court decided *Miller*, the United States Supreme Court had recognized the differences between the

culpability of juveniles and adults. *See Thompson v. Oklahoma*, 487 U.S. 815, 835, 108 S. Ct. 2687, 2698 (1988). In *Thompson*, the Court held:

> It is generally agreed "that punishment should be directly related to the personal culpability of the criminal defendant." *California v. Brown*, 479 U.S. 538, 545, 107 S. Ct. 837, 841, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring). There is also broad agreement on the proposition that adolescents as a class are less mature and responsible than adults. We stressed this difference in explaining the importance of treating the defendant's youth as a mitigating factor in capital cases:
>
>> "But youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage. Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults. Particularly 'during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment' expected of adults. *Bellotti v. Baird*, 443 U.S. 622, 635 [99 S. Ct. 3035, 3043, 61 L.Ed.2d 797] (1979)." *Eddings v. Oklahoma*, 455 U.S. 104, 115-116, 102 S. Ct. 869, 877, 71 L.Ed.2d 1 (1982) (footnotes omitted).
>
> To add further emphasis to the special mitigating force of youth, Justice Powell quoted the following passage from the 1978 Report of the Twentieth Century Fund Task Force on Sentencing Policy Toward Young Offenders:
>
>> "'[A]dolescents, particularly in the early and middle teen years, are more vulnerable, more impulsive, and less self-disciplined than adults. Crimes committed by youths may be just as harmful to victims as those committed by older persons, but they deserve less punishment because

adolescents may have less capacity to control their conduct and to think in long-range terms than adults. Moreover, youth crime as such is not exclusively the offender's fault; offenses by the young also represent a failure of family, school, and the social system, which share responsibility for the development of America's youth.'" 455 U.S., at 115, n.11, 102 S. Ct. 877, n.11.

Thus, the Court has already endorsed the proposition that less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult. The basis for this conclusion is too obvious to require extended explanation. Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult. The reasons why juveniles are not trusted with the privileges and responsibilities of an adult also explain why their irresponsible conduct is not as morally reprehensible as that of an adult.

*Thompson*, 487 U.S. at 834-35, 108 S. Ct. at 2698-99 (footnotes omitted).

[37] The science regarding juvenile brain development cited by Kelly has certainly advanced since Kelly was convicted. Dr. Keating testified regarding juvenile brain development science and the impact of early life trauma and adversity on brain development. Dr. Keating testified that technology changes since the early 2000s have allowed the study of brains during juvenile development. As the State points out though, "[t]he scientific evidence Kelly relies on is not new; it is simply a continuing line of research that was already known and available when [Kelly] was tried and sentenced and could have been put before the trial court in 1996." Appellee's Br. p. 46. Under these circumstances, we conclude

that Kelly's evidence regarding juvenile brain development science is not newly discovered evidence.

## B. Cumulative Evidence

[38] The PC Court found that the juvenile brain development science was cumulative of other evidence presented at Kelly's sentencing hearing. "Cumulative evidence is 'additional evidence that supports a fact established by the existing evidence. . . . [T]o be considered cumulative, evidence should be of the same kind or character. That is, evidence will not be considered cumulative if it tends to prove the same facts, but in a materially different way.'" *Bunch v. State*, 964 N.E.2d 274, 290 (Ind. Ct. App. 2012) (quoting *In re Paternity of H.R.M.*, 864 N.E.2d 442, 451 (Ind. Ct. App. 2007)), *trans. denied*.

[39] At Kelly's sentencing hearing, his counsel argued:

> The third thing I think which is obvious, too, here, in terms of a potential mitigator, is this Defendant's age. Nobody is the same person when they're 25 or 35 or 45 or whatever, that they were when they were 16 years old. He's 17 now, but he was 16 at the time of this shooting. That is such an age where you really don't know what kind of person you have there. You don't know to what extent their conduct is the produc[t] of gross immaturity or whether there is something more missing from a person. You can't tell what a person is going to turn out like, based on their actions at 16; and I think the law generally recognizes that.

Amended Ex. Vol. I p. 38. The trial court was clearly concerned about Kelly's age and asked the deputy prosecutor to address the issue. *Id.* at 42. In the trial court's remarks, the trial court focused on Kelly's age and noted that "it's very

difficult . . . to sentence a person who is 16 years old at the time he commits two murders." *Id.* at 52.  The trial court then found Kelly's age to be a mitigating factor.  The trial court, thus, was well aware of the differences between adult and juvenile behaviors; Dr. Keating's testimony merely provided the scientific explanation for the differences.  The PC Court's finding that the evidence is cumulative is not clearly erroneous.

## C.  Different Result

[40]    The PC Court also found that the juvenile brain development science evidence would not have produced a different sentencing result.  "In ruling on whether the evidence would produce a different result, the trial court may properly consider the weight that a reasonable trier of fact would give it and while so doing may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case." *Bunch*, 964 N.E.2d at 296 (quoting *Reed v. State*, 702 N.E.2d 685, 691 (Ind. 1998)).  "[T]he defendant must raise a strong presumption that the result at any subsequent trial in all probability would be different." *Id.*  "A sufficient probability of a different result upon retrial is present when the omitted evidence creates a reasonable doubt that did not otherwise exist." *Id.*

[41]    At the time of Kelly's offense, the presumptive sentence for murder was fifty-five years with not more than ten years added for aggravating circumstances or more than ten years subtracted for mitigating circumstances.  *See* Ind. Code § 35-50-2-3 (1995).  The trial court here imposed consecutive fifty-five-year sentences.  The trial court considered Kelly's age and lack of an adult criminal

history as mitigators, but the trial court did not find the lack of an adult criminal history to be a "substantial mitigating factor, because he's only 17 years old right now." Amended Ex. Vol. I p. 52. The trial court found the following aggravators: (1) Kelly's juvenile history; (2) the fact that he was on probation at the time of the offense; (3) the fact that Kelly fired the first shots; and (4) the fact that two victims were shot at close range. Despite some significant aggravators, the trial court imposed the presumptive sentence on the two murder convictions. It is clear that the trial court already considered Kelly's age as a significant mitigator. Even if evidence of juvenile brain development science had been presented, we cannot say the trial court probably would have imposed a lesser sentence. Accordingly, the PC Court's denial of this claim is not clearly erroneous.

## V. Kelly's Claim under Indiana Appellate Rule 7(B) Fails

[42] Finally, Kelly argues that his sentence is inappropriate pursuant to Appellate Rule 7(B). The Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decision. *See* Ind. Const. Art. 7, §§ 4, 6; *Jackson v. State*, 145 N.E.3d 783, 784 (Ind. 2020). Our Supreme Court has implemented this authority through Indiana Appellate Rule 7(B), which allows this Court to revise a sentence when it is "inappropriate in light of the nature of the offense and the character of the offender."

[43] The Indiana Supreme Court has utilized Appellate Rule 7(B) on several recent occasions to revise lengthy juvenile sentences. *See Wilson*, 157 N.E.3d at 1184 (on post-conviction review, reducing a sixteen-year-old defendant's 181-year

sentence to one hundred years for two gang-related murders and noting that "the main factor weighing in favor of a shorter sentence is Wilson's age"); *State v. Stidham*, 157 N.E.3d 1185, 1191 (Ind. 2020) (on post-conviction review, reducing a seventeen-year-old defendant's 138-year sentence to eighty-eight years for a brutal murder where the victim was stabbed forty-seven times), *reh'g denied*; *Taylor v. State*, 86 N.E.3d 157, 167 (Ind. 2017) (reducing a seventeen-year-old defendant's LWOP sentence to eighty years for a "senseless and heinous" murder); *Fuller v. State*, 9 N.E.3d 653, 659 (Ind. 2014) (reducing a fifteen-year-old defendant's 150-year sentence to eighty-five years for two murders committed during a robbery); *Brown v. State*, 10 N.E.3d 1, 8 (Ind. 2014) (reducing a sixteen-year-old defendant's 150-year sentence to eighty years for two murders committed during a robbery).

[44] The State, however, contends that this argument is barred by res judicata because our Supreme Court has already reviewed Kelly's sentence under former Appellate Rule 17(B) in Kelly's direct appeal.[5] At the time of Kelly's offense, former Appellate Rule 17(B) provided: "The Court shall not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." On direct appeal,

---

[5] At the time of Kelly's offense, the "manifestly unreasonable" language was found in Appellate Rule 17(B). When the Appellate Rules underwent substantial revision in 2001, this language was moved to Appellate Rule 7(B). Effective January 1, 2003, our Supreme Court amended Appellate Rule 7(B) to provide that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

our Supreme Court rejected Kelly's argument that his 110-year sentence was manifestly unreasonable. *See Kelly*, 719 N.E.2d at 394.

[45]　In *Conley v. State*, 183 N.E.3d 276, 288 (Ind. 2022), our Supreme Court held:

> "As a general rule, when a reviewing court decides an issue on direct appeal, the doctrine of res judicata applies, thereby precluding its review in postconviction proceedings." *Stidham*, 157 N.E.3d at 1191 (citations omitted). Notwithstanding res judicata, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance." *Id.* (quoting *State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994)). This power should only be used in "extraordinary circumstances" where the initial decision "was clearly erroneous and would work manifest injustice." 157 N.E.3d at 1191 (internal quotations omitted).

> In *Stidham*, we found the requisite "extraordinary circumstances" existed to overcome res judicata's bar on revisiting and revising a juvenile offender's sentence under Article 7, Section 4 of the Indiana Constitution. *Id.* at 1192-93. There, we observed two fundamental shifts in sentencing law between 1994, when our Court of Appeals first evaluated whether Stidham's sentence should be revised, and 2020, when we considered the matter on post-conviction relief. *Id.* The first major shift was that Indiana's standard for reviewing and revising sentences under Article 7, Section 4 of the Indiana Constitution changed. *Id.* (noting the change from the "manifestly unreasonable" standard to the existing "inappropriate in light of the nature of the offense and character of the offender" standard under App. R. 7(B)). The second major shift between 1994 and 2020 was the evolution in the way that we evaluate juvenile offenders, informed by U.S. Supreme Court precedent from the 2000s. *Id.* at 1193 (citing *Roper*, 543 U.S. 551, 125 S. Ct. 1183; *Graham*, 560 U.S. 48, 130 S. Ct. 2011; and *Miller*, 567 U.S. 460, 132 S. Ct. 2455).

*Conley*, 183 N.E.3d at 288 (footnote omitted).

[46] While these extraordinary circumstances **may** exist here, we do not have the authority to reach this issue. In *Stidham*, the Court noted that "'[a] court has the power to revisit prior **decisions of its own or of a coordinate court** in any circumstance.'" 157 N.E.3d at 1191 (quoting *Huffman*, 643 N.E.2d at 901) (emphasis added). We, however, are not a "coordinate court" of our Supreme Court. *See, e.g.*, *State v. Stidham*, 110 N.E.3d 410, 423 (Ind. Ct. App. 2018) (May, J. concurring in result), *vacated by* 157 N.E.3d 1185 (Ind. 2020). Noting Judge May's concurring opinion, our Supreme Court stated in *Stidham*, "because the Court of Appeals cannot revisit decisions of this Court, [Judge May] admittedly could not reach the merits to consider the appropriateness of Stidham's sentence, so she concurred in the result of the majority's ruling." *Stidham*, 157 N.E.3d at 1190. Accordingly, while our Supreme Court has the authority to review Kelly's sentence under Rule 7(B), we do not; our review of Kelly's sentence under Rule 7(B) is barred by res judicata. The PC Court's denial of this claim is not clearly erroneous.

## Conclusion

[47] We conclude that the PC Court's denial of Kelly's successive petition for post-conviction relief is not clearly erroneous. Accordingly, we affirm.

[48] Affirmed.

Mathias, J., and Weissmann, J., concur.

ATTORNEYS FOR APPELLANT

Amy E. Karozos
Public Defender of Indiana

Katherine Province
Joanna Green
Deputy Public Defenders
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana